**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

***In re Fidelity ERISA Fee Litigation***

Civil Action No. 1:19-cv-10335-LTS

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT**

**Leave to File Reply Granted on 4/22/19**

**Assented-To Motion for Leave to File Reply Brief in Excess of Five Pages Filed on 8/15/19**

# TABLE OF CONTENTS

Page

A. PLAINTIFFS MISSTATE THE RULES OF CIVIL PROCEDURE. ... 1

B. FIDELITY IS NOT A FIDUCIARY WHEN NEGOTIATING INFRASTRUCTURE FEES. ... 2

1. Fidelity Is Not A Fiduciary With Respect To Its Own Compensation. ... 2

2. Fidelity Is Not A Fiduciary For Purposes Of Fund Selection. ... 4

3. Fidelity's Use Of Omnibus Accounts Does Not Establish Fiduciary Status As To Its Own Compensation. ... 5

C. EVEN IF FIDELITY WERE A FIDUCIARY AS TO ITS COMPENSATION, PLAINTIFFS' PROHIBITED TRANSACTION CLAIMS UNDER SECTIONS 406(B)(1) AND (B)(2) STILL WOULD FAIL. ... 6

D. THE COMPLAINT ALLEGES NO BASIS FOR NON-FIDUCIARY LIABILITY. ... 7

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30 (1st Cir. 2001)........................................ 2

*Fishman Haygood Phelps Walmsley Willis & Swanson, L.L.P. v. State Street Corp.*, No. 1:09-cv-10533-PBS, 2010 WL 1223777 (D. Mass. Mar. 25, 2010)........................................ 7

*Fleming v. Fid. Mgmt. Tr. Co.*, No. 16-cv-10918-ADB, 2017 WL 4225624 (D. Mass. Sept. 22, 2017)........................................ 5

*Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002)........................................ 7

*Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000)........................................ 7

*In re Fid. ERISA Float Litig.*, 829 F.3d 55 (1st Cir. 2016)........................................ 6

*Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905 (7th Cir. 2013)........................................ 5

*Pegram v. Herdrich*, 530 U.S. 211 (2000)........................................ 5

*Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011)........................................ 6

*Teets v. Great-W. Life & Annuity Ins. Co.*, 919 F.3d 1232 (10th Cir. 2019)........................................ 5

*Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014)........................................ 6

*Zavala v. Kruse-Western, Inc.*, No. 1:19-cv-00239-DAD-SKO, 2019 WL 3387102 (E.D. Cal. July 26, 2019)........................................ 7

**Statutes**

29 U.S.C. § 1106(b)(1)........................................ 6

Plaintiffs[1] contend that "infrastructure fees" are "simply a new variation" on the common "revenue sharing" practices that have been challenged in numerous prior cases. Opp. 2. Here, as in those cases, plaintiffs claim that Fidelity breached fiduciary duties by negotiating and accepting payments from mutual fund companies. And here, as in those cases, this Court should reject plaintiffs' claims on the pleadings, because it is as true now as it was then that the conduct challenged—providing a platform for distribution of mutual funds, and negotiating compensation from the fund companies in return—is not fiduciary conduct under ERISA.

**A. Plaintiffs Misstate The Rules Of Civil Procedure.**

In an effort to escape the abundance of cases dismissing similar claims, plaintiffs misstate the rules of civil procedure in two ways. First, they assert that "Fidelity cannot properly challenge its status as an ERISA fiduciary" on a motion to dismiss. Opp. 6-7. But the issue of fiduciary status is no different from any other: If the complaint fails to allege facts establishing that a defendant was acting as a fiduciary in connection with the challenged conduct, then any claim dependent on fiduciary status must be dismissed. Courts applied exactly that rule in the many cases discussed in Fidelity's opening brief, dismissing challenges to revenue sharing and other third-party compensation arrangements. Mot. 8 n.5 (discussing cases).

Second, plaintiffs assert that Fidelity is prohibited from relying on its contracts with the plaintiffs' plans to support its motion to dismiss. Opp. 4-6. But the Complaint could hardly make clearer that those contracts are integral to plaintiffs' claims. An entire section of the Complaint addresses "The Agreements Between The Plans And Fidelity, The Retirement Investments Provided Under Those Agreements[.]" CAC ¶¶ 54-75. And the Opposition

[1] Plaintiffs' opposition (Opp. 1) incorrectly identifies as a plaintiff the Board of Trustees of UFCA Local 23 & Giant Eagle Pension Fund, which was struck from the complaint on June 25, 2019. *See* ECF Nos. 42 & 43.

summarizes plaintiffs' contract-based theory succinctly: "Fidelity is a fiduciary with respect to its own compensation both because it has the *contractual authority* to determine its own compensation and because it acted outside of its *contractual authority* when doing so." Opp. 10 (emphasis added). Having relied on Fidelity's contracts with the plans for its claims, Plaintiffs cannot pick and choose which provisions the Court may consider. Indeed, the very case Plaintiffs cite to support their "provision-by-provision" argument actually held that the *entirety* of a contract was incorporated into the complaint by reference where, as here, the complaint "refer[red] to the [the contract] or its terms numerous times." *Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 34 (1st Cir. 2001).[2]

**B. Fidelity Is Not A Fiduciary When Negotiating Infrastructure Fees.**

1. Fidelity Is Not A Fiduciary With Respect To Its Own Compensation.

Plaintiffs admit that, to "become[] an ERISA fiduciary with respect to its compensation," an entity must possess unilateral "discretion and control over the factors that determine the amount of its compensation." Opp. 9 (quotation omitted); *see id.* ("unilateral control" required (quotation omitted)). Plaintiffs contend that their Complaint meets this test because, in addition to the fees Fidelity negotiates with each plan (through an admittedly non-fiduciary process), the Complaint alleges that Fidelity separately "negotiate[s] and receive[s]" infrastructure fees from mutual fund companies, including from funds selected by the plans. *Id.* at 10. Plaintiffs'

[2] Fidelity produced to plaintiffs complete versions of all of the contracts relied on in the motion to dismiss (and all subsequent amendments, comprising 18 documents and over 275 pages) the day after the motion was filed. *See* Decl. of Samuel R. Lehman In Support of Defs.' Mot. to Dismiss the Pls.' Consol. Am. Compl. ¶ 3. Accordingly, plaintiffs cannot complain that they lacked access to the full agreements, and they do not voice any basis for questioning their authenticity. Opp. 5. Nonetheless, in order to remove all doubt, Fidelity has submitted with its reply brief the Declaration of Stephanie Nick, attesting that the documents produced to plaintiffs on July 2, 2019 constitute a complete, true and correct copy of Fidelity's service agreement with T-Mobile USA, Inc. governing the T-Mobile USA, Inc. 401(k) Retirement Savings Plan & Trust in effect as of January 1, 2017 (when plaintiffs allege the infrastructure fee went into effect, see CAC ¶ 5) and the subsequent amendments thereto, and that the excerpts submitted to the Court in support of this motion are true and correct excerpts from those documents.

argument defeats itself: By their own account, Fidelity does not unilaterally impose infrastructure fees, but "negotiate[s]" them with the fund companies. *Id.*[3] Fidelity thus lacks *unilateral control* over the infrastructure fees.

Plaintiffs acknowledge the numerous prior decisions holding that, where a platform provider negotiates compensation from a third-party mutual fund manager, the provider does not set those fees unilaterally and thus does not act as a fiduciary in connection with that compensation. Opp. 9-10 (citing cases). They attempt to distinguish those cases on the ground that, here, Fidelity allegedly negotiated the payment of infrastructure fees from the mutual fund companies *after* it negotiated its service agreements with the plans. *Id*. at 10. But this is a distinction without a difference: The cases dismissing similar claims for lack of fiduciary conduct have relied entirely on the fact that the challenged fees were fixed through negotiation with a third party (generally, fund companies); they have not turned on the *timing* of those negotiations. Mot. 9-10 (citing cases).[4]

Finally, to the extent plaintiffs seek to bolster their argument by asserting that plan sponsors were unaware of the infrastructure fees at the time they negotiated their service agreements with Fidelity (Opp. 11-12), that argument has already been fully rebutted in Fidelity's opening brief (Mot. 10-11).

---

[3] In support of their assertion that Fidelity "*does* unilaterally dictate its compensation for the services it provides to the Plans" (Opp. 9), plaintiffs cite two paragraphs of their Complaint, but those paragraphs allege only that Fidelity "negotiate[s]" infrastructure fees with the fund companies. CAC ¶ 8; *see id.* ¶ 83. Additionally, while plaintiffs point to a paragraph in the Complaint alleging that Fidelity has increased the amount of the infrastructure fee over time (Opp. 11 n.13), the Complaint makes clear that the alleged increases were part of the "fee schedule" to the contract governing Fidelity's compensation from the fund company (CAC ¶ 13)—a contract that was negotiated and executed *bilaterally*.

[4] Platform providers of course constantly negotiate and renegotiate both their service agreements with plans and their compensation structures with mutual fund companies. Accordingly, there are no differences in timing or sequencing that could plausibly distinguish this case from the revenue sharing cases that were uniformly dismissed.

2. Fidelity Is Not A Fiduciary For Purposes Of Fund Selection.

Plaintiffs admit that a mutual fund platform provider has no fiduciary duty as to the design of its platform, so long as "the plan sponsor [retains] sole authority to decide" which of the options made available on the platform to offer in the plan. Opp. 14. But plaintiffs argue that plan sponsors lack that sole authority here. Citing one paragraph in their Complaint—paragraph 69—plaintiff insist they have alleged that Fidelity can override the plan sponsors' decisions about which funds to select for their plan lineups. Not so. Paragraph 69 alleges only that "Fidelity has exercised the discretion to add, delete and substitute mutual funds from *its FundsNetwork*" platform—*not* that Fidelity may unilaterally add or remove funds from a *given plan's lineup*. CAC ¶ 69 (emphasis added); *see id.* ¶ 71 (Fidelity "controls the menu of available mutual funds offered in its FundsNetwork"). The allegations here are thus no different than the allegations in the numerous cases declining to assign fiduciary status to platform providers. Mot. 12-13.

Moreover, plaintiffs' suggestion that Fidelity has control over the plans' investment lineups is belied by the Service Agreements on which plaintiffs' claims are based. Those Agreements provide that "[a]ll Plan assets must be invested in the Permissible Investments selected by the Employer," and they make clear that Fidelity has "no responsibility" for those selections. Boyle Decl., Ex. B, at 3; *see* Mot. 13-14. Plaintiffs suggest that these clear provisions are somehow nullified because the Service Agreement separately allows Fidelity to amend the Agreement where necessary "to *comply with then current law*, or to update *services and procedures*." Opp. 13 (citing Boyle Decl., Ex. B, at 5) (emphasis added). Changes to the investment options do not fall into either of these categories, however, and so Fidelity is contractually precluded from making them.

3. Fidelity's Use Of Omnibus Accounts Does Not Establish Fiduciary Status As To Its Own Compensation.

All agree that Fidelity serves as a "directed trustee," and that, in that role, Fidelity has a duty to follow the plan sponsor's directions concerning disposition of assets in the Omnibus Accounts. Plaintiffs do not deny that Fidelity has followed those directions scrupulously. Opp. 15. Instead, they contend that Fidelity may nevertheless be held liable as a fiduciary for conduct they admit has nothing to do with the directions Fidelity received, *i.e.*, "the challenged conduct of obtaining kickback payments," as plaintiffs put it. Opp. 16. Plaintiffs are wrong on the law: Where, as here, there is no clear nexus between the alleged fiduciary obligations and the conduct challenged, claims of fiduciary breach cannot stand. *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000); *see Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 913 (7th Cir. 2013) (rejecting materially identical argument because the complaint did not "arise from [the service provider's] handling of the separate account"). To be sure, Fidelity's business as a mutual-fund-platform provider to 401(k) plans may make Fidelity an attractive partner for fund managers seeking to join its platform, but courts have consistently and repeatedly held that negotiating with those managers to obtain compensation is not a fiduciary function. *See* Mot. 9-10 (citing the numerous cases holding that negotiating to receive revenue sharing payments from fund managers is non-fiduciary conduct); *Fleming v. Fid. Mgmt. Tr. Co.*, No. 16-cv-10918-ADB, 2017 WL 4225624, at *6-7 (D. Mass. Sept. 22, 2017) (negotiating to receive payments from third party Financial Engines was non-fiduciary).[5]

---

[5] Plaintiffs' cursory effort to distinguish Fidelity's authority on this point gets them nowhere. The fact that *Teets v. Great-W. Life & Annuity Ins. Co.*, 919 F.3d 1232 (10th Cir. 2019), did not involve a directed trustee is irrelevant. What matters is that, as in *Teets*, plaintiffs have failed to allege *any* nexus between the allegedly wrongful conduct (negotiating and obtaining infrastructure fees) and any fiduciary obligations. *See id*. at 1239 (explaining that an alleged breach of a functional fiduciary's obligations must "arise out of" those obligations); Opp. 15. And plaintiffs'

### C. Even If Fidelity Were A Fiduciary As To Its Compensation, Plaintiffs' Prohibited Transaction Claims Under Sections 406(b)(1) And (b)(2) Still Would Fail.

Section 406(b)(1) proscribes "transactions between [a] plan and [a] fiduciary" through which the fiduciary "deal[s] with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1). Plaintiffs recognize that mutual fund assets are not "plan assets" and thus infrastructure fees paid by FundsNetwork mutual funds are not paid from "plan assets." Opp. 17-18 & n.21. Plaintiffs argue, however, that assets *in the Omnibus Account* constitute plan assets, and that Fidelity unlawfully deals with those assets for its own account. Opp. 18. That argument is incorrect for two reasons. First, courts have already examined Fidelity's process for purchasing mutual fund shares on behalf of plans and have concluded that, *as soon as a plan participant places an order*, and thus has a right to receive a mutual fund share, the relevant "plan asset" is the mutual fund share itself, and not the assets used to purchase those shares. *See Tussey v. ABB, Inc.*, 746 F.3d 327, 340 (8th Cir. 2014); *see also In re Fid. ERISA Float Litig.*, 829 F.3d 55, 61-62 (1st Cir. 2016). Second, even assuming Omnibus Account assets are plan assets, Fidelity does not "transact[]" in those assets for its "own account": Instead, Fidelity simply executes the plan sponsor's instructions as to their disposition. The only relevant "transactions" made for Fidelity's own account are the negotiation and receipt of infrastructure fees from mutual fund companies, and Plaintiffs admit those transactions do not involve plan assets. *See* Opp. 17-18.

Plaintiffs also fail to resuscitate their Section 406(b)(2) claim. They concede that a claim under Section 406(b)(2) requires that the defendants' conduct promote the interests of a third

---

attempt to "distinguish" *Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011), depends entirely on their erroneous theory that Fidelity has the authority to select or control plans' investment lineups. Opp. 16; *see supra* at 4.

party, and that their Complaint identifies no such third party. Nonetheless, they half-heartedly suggest that their Section 406(b)(2) claim should still survive, just in case the court determines that one or more of the named "Fidelity entities is not [] part of the integrated enterprise/alter egos." Opp. 18. But, because the Complaint does not allege any facts supporting such a "Fidelity as third party" theory (and, to the contrary, insists that the Fidelity entities act together "as an integrated enterprise," CAC ¶ 38; *see id.* ¶ 40), Plaintiffs have pleaded themselves out of a Section 406(b)(2) claim.

**D. The Complaint Alleges No Basis for Non-Fiduciary Liability.**

Nothing in the Opposition cures plaintiffs' failure to plead multiple facts necessary to support their non-fiduciary claim. First, the Complaint makes no effort to identify a specific, traceable *res* of funds that could now be disgorged. Mot. 19.[6] Plaintiffs once again attempt to turn the pleading standard on its head, arguing that they are not required to identify a particular *res* in their Complaint. But the case that they cite to support this assertion, *Zavala v. Kruse-Western, Inc.*, No. 1:19-cv-00239-DAD-SKO, 2019 WL 3387102 (E.D. Cal. July 26, 2019), says no such thing. Instead, *Zavala* describes several methods for identifying a *res*, *id.* at *5, and Plaintiffs plead none of them. Nor do Plaintiffs even allege generally that the infrastructure fees currently remain in Fidelity's possession, as *Zavala* requires, *id.* at *5 n.3.

---

[6] It is settled that ERISA plaintiffs may recover monetary relief on a non-fiduciary claim *only* if they can identify "particular funds or property in the defendant's possession" that the defendant wrongfully obtained. Mot. 19 (quoting *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002)). Plaintiffs' own cases (Opp. 19) establish the point. Consistent with *Knudson*, the Court in *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000), held that restitution or disgorgement was an available remedy where the plaintiffs could identify specific property still in the non-fiduciary's possession that was allegedly wrongfully obtained—there, the proceeds of allegedly worthless real estate that the non-fiduciary party-in-interest had sold to the plan at an inflated value. *Id.* at 242-243, 250. And the other case plaintiffs cite, *Fishman Haygood Phelps Walmsley Willis & Swanson, L.L.P. v. State Street Corp.*, No. 1:09-cv-10533-PBS, 2010 WL 1223777 (D. Mass. Mar. 25, 2010), states only that "disgorgement" can be an available remedy as to a non-fiduciary, *id.* at *7, which is true but irrelevant; what matters is that disgorgement is available *only when there is an identifiable* res *of funds or property*.

Second, plaintiffs do not allege facts establishing that any Fidelity entity had actual or constructive knowledge that any plan fiduciary's conduct violated ERISA. Mot. 20. Plaintiffs say they cannot "flesh out" their knowledge allegations absent discovery (Opp. 19), but the problem is more fundamental: they allege no facts *at all* establishing that any Fidelity entity knew that any plan fiduciary was causing a plan to engage in potentially unlawful transactions in connection with infrastructure fees.

**CONCLUSION**

For the foregoing reasons, and those previously stated, this Court should dismiss plaintiffs' claims in full and with prejudice.

Dated: August 15, 2019

Respectfully submitted,

*/s/ Brian D. Boyle*

Brian D. Boyle (*pro hac vice*)
bboyle@omm.com
Gregory F. Jacob (*pro hac vice*)
gjacob@omm.com
Bradley N. Garcia (*pro hac vice*)
bgarcia@omm.com
Raghav Ahuja (*pro hac vice*)
rahuja@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

John J. Falvey (BBO# 542674)
jfalvey@goodwinlaw.com
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Telephone: (617) 570-1000
Facsimile: (617) 523-1231

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 15, 2019.

*/s/ Brian D. Boyle*
Brian D. Boyle (*pro hac vice*)