UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| *IN RE FIDELITY ERISA FEE LITIGATION* | CIVIL ACTION NO. 1:19-CV-10335-LTS <br><br> **PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT** |

Plaintiffs, the Board of Trustees of UFCW Local 23 & Giant Eagle Pension Fund, Janice Anderson, Jason Bailis, Natalie Donaldson, Cynthia Eddy, Myrl Jeffcoat, Thomas Goodrich, Kayla Jones, Karen Pettus, Gina Summers, Andre W. Wong, and Heather Woodhouse (collectively, "Plaintiffs"), respectfully submit supplemental authority in opposition to the Defendants' Motion to Dismiss.

On February 3, 2020, the United States Court of Appeals for the Eighth Circuit decided *Rozo v. Principal Life Insurance Co.*, No. 18-3310, 2020 WL 543378 (8th Cir. Feb. 3, 2020), holding that "[a] service provider may be a fiduciary when it exercises discretionary authority, even if the contract authorizes it to take the discretionary act." *Id*. at *2.[1] Relying on *Teets v. Great-West Life &Annuity Ins. Co.*, 921 F.3d 1200 (10th Cir. 2019), the Court held that if a "provider's actions (1) conform to specific contract terms or (2) a plan and participant can freely reject it, then the provider is not acting with 'authority' or 'control' respecting the 'disposition of [the plan's] assets.'" *Rozo*, 2020 WL 543378, at *2, *quoting* 29 U.S.C. § 1002(21)(A). The Eighth Circuit found that Principal was acting as a fiduciary when it set a guaranteed rate of return for plan participants, the Composite Crediting Rate ("CCR"), even

---

[1] A copy of the *Rozo* decision is attached hereto as **Exhibit A**.

1

though the contract empowered Principal to set the rate of the contract because the CCR was not a specific term of the contract. *Id.* at *1-2. In the instant case, Defendants' actions do not conform to specific contract terms and neither the plan nor its participants can freely reject the imposition of infrastructure fees because they are not provided notice of such fees by Defendants. Thus, Defendants are acting as fiduciaries with respect to their receipt of the infrastructure fees by exercising discretionary authority to supplement their own income by collecting infrastructure fees from mutual fund companies.

Dated: February 6, 2020                                  Respectfully submitted,

/s/ David Pastor
David Pastor (BBO #391000)
Pastor Law Office, LLP
63 Atlantic Avenue, 3rd Floor
Boston, MA 02110
Telephone: (617) 742-9700
Facsimile: (617) 742-9701
Email: dpastor@pastorlawoffice.com

James E. Miller
Laurie Rubinow
Shepherd Finkelman Miller
 & Shah, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (866) 300-7367
Email: jmiller@sfmslaw.com
            lrubinow@sfmslaw.com

Ronald S. Kravitz
Kolin C. Tang
Shepherd Finkelman Miller
 & Shah, LLP
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone: (415) 429-5272
Facsimile: (866) 300-7367
Email: rkravitz@sfmslaw.com

ktang@sfmslaw.com

Nathan Zipperian
Shepherd Finkelman Miller
 & Shah, LLP
1625 N. Commerce Pkwy Suite 320
Fort Lauderdale, FL 33326
Telephone: (954) 515-0123
Facsimile: (866) 300-7367
Email: nzipperian@sfmslaw.com

Chiharu G. Sekino
Jaclyn M. Reinhart
Shepherd Finkelman Miller
 & Shah, LLP
1230 Columbia Street Suite 1140
San Diego, CA 92101
Telephone: (619) 235-2416
Facsimile: (866) 300-7367
Email: csekino@sfmslaw.com
        jreinhart@sfmslaw.com

Sahag Majarian
Law Offices of Sahag Majarian
18250 Ventura Blvd.
Tarzana, CA 91356
Telephone: (818) 609-0807
Facsimile: (818) 609-0892
Email: sahagii@aol.com

Daniel E. Bacine
Mark R. Rosen
Barrack, Rodos & Bacine
2001 Market Street, Suite 3300
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
Email: dbacine@barrack.com
        mrosen@barrack.com

Jeffrey Block
Block & Leviton LLP
155 Federal Street, Suite 400
Boston, MA 02110
Telephone: (617) 398-5600
Facsimile: (617) 507-6020

3

Email: jblock@blockesq.com

R. Joseph Barton (*pro hac vice to be filed*)
Block & Leviton LLP
1735 20th St NW,
Washington DC 20009
Telephone: (202) 734-7046
Email: jbarton@blockesq.com

Dena C. Sharp
Adam E. Polk
Elizabeth A. Kramer (*pro hac vice to be filed*)
Girard Sharp LLP
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
Email: dsharp@girardsharp.com
           apolk@girardsharp.com
           ekramer@girardsharp.com

***Attorneys for Plaintiffs
and the Proposed Class***

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/David Pastor
David Pastor

# EXHIBIT A

2020 WL 543378
Only the Westlaw citation is currently available.
United States Court of Appeals, Eighth Circuit.

Frederick ROZO Plaintiff - Appellant
v.
PRINCIPAL LIFE INSURANCE
COMPANY Defendant - Appellee
Principal Financial Group, Inc. Defendant
American Council of Life Insurers;
Chamber of Commerce of the United
States of America; American Benefits
Council Amici on Behalf of Appellee(s)

No. 18-3310
|
Submitted: October 18, 2019
|
Filed: February 3, 2020

**Synopsis**
**Background:** Participant in profit sharing plan filed class action under Employee Retirement Income Security Act (ERISA) alleging that service provider that operated fund in which participant invested via plan breached its fiduciary duty and engaged in prohibited transaction when it set fixed rate of return. The United States District Court for the Southern District of Iowa, John A. Jarvey, Chief Judge,  344 F.Supp.3d 1025, entered summary judgment in service provider's favor, and participant appealed.

[**Holding:**] The Court of Appeals, Benton, Circuit Judge, held that service provider was "fiduciary" under ERISA when it set guaranteed rate of return.

Reversed and remanded.

**Procedural Posture(s):** On Appeal; Motion for Summary Judgment.

West Headnotes (4)

[1]  **Federal Courts**

Court of Appeals reviews de novo district court's grant of summary judgment, viewing genuinely disputed facts in light most favorable to nonmoving party.

[2]  **Federal Civil Procedure**

If record taken as a whole could not lead rational trier of fact to find for nonmoving party, summary judgment should be granted.

[3]  **Labor and Employment**

Service provider was "fiduciary" under ERISA when it set guaranteed rate of return for retirement plan, even though provider's contract with plan sponsors authorized it to set rate of return, and plan participants could freely reject rate, where provider set rate of return with no specific contract terms controlling rate, and plan sponsors did not have unimpeded ability to reject service provider's action or terminate relationship. Employee Retirement Income Security Act of 1974 § 3,  29 U.S.C.A. § 1002(21)(A).

[4]  **Labor and Employment**

Service provider acts as "fiduciary" under ERISA if (1) it did not merely follow specific contractual term set in arm's-length negotiation, and (2) it took unilateral action respecting plan management or assets without plan or its participants having opportunity to reject its decision. Employee Retirement Income Security Act of 1974 § 3,  29 U.S.C.A. § 1002(21)(A).

Appeal from United States District Court for the Southern District of Iowa - Des Moines

**Attorneys and Law Firms**

Counsel who presented argument on behalf of the appellant and appeared on the brief was Peter K. Stris, of Los Angeles, CA. The following attorney(s) also appeared on the appellant brief; Rachana A. Pathak, of Los Angeles, CA, Douglas D. Geyser, of Los Angeles, CA., John Stokes, of Los Angeles, CA, Todd Jackson of Berkeley, CA, Nina Wasow, of Berkeley, CA, Todd Schneider of Emeryville, CA, Mark Johnson, of Emeryville, CA, Jason Kim, of Emeryville, CA, John B. Goplerud, of West Des Moines, IA, Brandon M. Bohlman, of West Des Moines, IA, Garrett W. Wotkyns, of Scottsdale, AZ, Christopher T. Micheletti, of San Francisco, CA, Heather T. Rankie, of San Francisco, CA, Rory David Zamansky, of Minneapolis, MN.

Counsel who presented argument on behalf of the appellee and appeared on the brief was Robert N. Hochman, of Chicago, IL. The following attorney(s) also appeared on the appellee brief; Angel A. West, of Des Moines, IA., Joel S. Feldman, of Chicago, IL., Mark Bruce Blocker, of Chicago, IL., Caroline A. Wong, of Chicago, IL., Tara Amin, of Chicago, IL.

The following attorney(s) appeared on the amicus brief; Nancy G. Ross, of Chicago, IL., James Frederick Jorden, of Washington, DC., Waldemar Jacob Pflepsen, Jr., of Washington, DC., Janet M. Jacobson, of Washington, DC., Steven P. Lehotsky, of Washington, DC., Michael A. Valerio, of Hartford, CT., Brian David Netter, of Washington, DC., Jed Wolf Glickstein, of Chicago, IL., Janet Galeria, of Washington, DC.

Before SMITH, Chief Judge, GRUENDER and BENTON, Circuit Judges.

**Opinion**

BENTON, Circuit Judge.

*1 Frederick Rozo invested in an Employee Retirement Income Security Act (ERISA) plan offered by Principal Life Insurance Company. The plan set a guaranteed rate of return every six months. Rozo alleges that Principal, a service provider to the plan, violated ERISA. The district court granted Principal summary judgment, finding that it is not a fiduciary when setting the rate. Having jurisdiction under 28 U.S.C. § 1291, this court reverses.

Principal offers a 401(k) retirement plan—a Principal Fixed Income Option ("plan")—which gives participants a guaranteed rate of return, the Composite Crediting Rate. Principal unilaterally calculates this CCR every six months. Before the CCR takes effect—typically a month in advance—Principal notifies plan sponsors, which alert the participants.

If a plan sponsor wants to reject the proposed CCR, it must withdraw its funds, facing two options: (1) pay a surrender charge of 5% or (2) give notice and wait 12 months. If a plan participant wishes to exit, he or she faces an "equity wash." They can immediately withdraw their funds, but not reinvest in plans like the PFIO for three months.

Rozo, a former plan participant, alleges that Principal's setting of the CCR breaches its fiduciary duty and engages in prohibited transactions under ERISA. Both counts rely on Principal being a fiduciary. Alternatively, if Principal is not a fiduciary, Rozo pleads that Principal is engaging in prohibited transactions as a party in interest.

After certifying a class action, the district court granted Principal summary judgment, concluding it is not a fiduciary nor liable as a party in interest. Rozo appeals.

[1] [2] This court reviews de novo a district court's grant of summary judgment viewing genuinely disputed facts "in the light most favorable to the nonmoving party." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc), *quoting Ricci v. DeStefano*, 557 U.S. 557, 586, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009). If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, summary judgment should be granted. *Torgerson*, 643 F.3d at 1042, *citing Ricci*, 557 U.S. at 586, 129 S.Ct. 2658.

I.

[3] Principal is a fiduciary when it sets the CCR. "[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ..." 29 U.S.C. § 1002(21)(A); *Maniace v. Commerce Bank of Kansas City, N.A.*, 40 F.3d 264, 267 (8th Cir. 1994) ("Clearly, discretion is the benchmark for fiduciary status under ERISA."). *See also Pegram v. Herdrich*, 530

U.S. 211, 226, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000) ("In every case charging breach of ERISA fiduciary duty, then, the threshold question is ... whether that person was acting as a fiduciary ... when taking the action subject to complaint.").

[4] The parties agree that a recent Tenth Circuit decision should guide this appeal. *Teets v. Great-West Life & Annuity Ins. Co.*, 921 F.3d 1200 (10th Cir. 2019). *Teets* determines that a service provider acts as a fiduciary: if (1) it "did not merely follow a specific contractual term set in an arm's-length negotiation" and (2) it "took a unilateral action respecting plan management or assets without the plan or its participants having an opportunity to reject its decision." *Id.* at 1212. *See McCaffree Financial Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1003 & n.2 (8th Cir. 2016) (analyzing (1) "adherence to" contract terms "clearly identified" and (2) "contract empowered [plan sponsor] to reject" service provider's act).

**\*2** This court agrees that *Teets*'s two-part test controls because it properly interprets ERISA. If the provider's actions (1) conform to specific contract terms or (2) a plan and participant can freely reject it, then the provider is not acting with "authority" or "control" respecting the "disposition of [the plan's] assets." *See* 29 U.S.C. § 1002(21)(A); **Black's Law Dictionary** (11th ed. 2019) (defining "authority" as "[t]he official right or permission to act, especially to act legally on another's behalf; especially, the power of one person to affect another's legal relations by acts done in accordance with the other's manifestations of assent"; defining "control" as "[t]o exercise power or influence over").

II.

At *Teets* step one, Principal's setting of the CCR does not "conform[ ] to a specific term of its contract with the employer plan." *Teets*, 921 F.3d at 1212. Every six months, Principal sets the CCR with no specific contract terms controlling the rate. Principal calculates the CCR based on past rates in combination with a new rate that it unilaterally inputs.

Principal asserts that it is acting pursuant to the contract because it authorizes Principal to set the CCR. This assertion conflates two issues. Although the contract empowers Principal to set the CCR, the rate is not a "specific term[ ] of the contract." *Teets*, 921 F.3d at 1212. When Principal notifies a plan sponsor of the proposed CCR, the sponsor has not agreed to it. A service provider may be a fiduciary when it exercises discretionary authority, even if the contract authorizes it to take the discretionary act.

> Prior case law "stands for the proposition that if a specific term (not a grant of power to change terms) is bargained for at arm's length, adherence to that term is not a breach of fiduciary duty. No discretion is exercised when an insurer merely adheres to a specific contract term. When a contract, however, grants an insurer discretionary authority, even though the contract itself is the product of an arm's length bargain, the insurer may be a fiduciary."

*Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 737 (7th Cir. 1986). Principal cites inapposite cases that did not find fiduciary status because—unlike the setting of the CCR here—the provider's act was contractually predetermined. *See McCaffree*, 811 F.3d at 1003 (finding no fiduciary status in a case alleging excessive fees because "the contract between [the parties] *clearly identified* each separate account's management fee and authorized [defendant] to pass through additional operating expenses to participants in these accounts.") (emphasis added); *Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 841 (9th Cir. 2018) (ruling no fiduciary capacity for "withdrawal of *predetermined* fees") (emphasis added); *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009) (contract giving plan sponsor "the final say" on investment options).

III.

At *Teets* step two, the plan sponsors here do not "have the unimpeded ability to reject the service provider's action or terminate the relationship." *Teets*, 921 F.3d at 1212. If a plan sponsor wishes to reject the CCR, it must leave the plan, with two options: (1) pay a 5% surrender charge or (2) have its funds remain in the plan for 12 months. Charging a 5% fee on a plan's assets impedes termination. Likewise, holding a plan's funds for 12 months after it wishes to exit impedes termination.[1] Principal, therefore, is a fiduciary exercising control and authority over the CCR. *See Chicago Bd. Options Exch., Inc. (CBOE) v. Connecticut General Life Ins. Co.*, 713 F.2d 254, 260 (7th Cir. 1983) (finding fiduciary status because a restriction requiring 10 years to withdraw funds "lock[ed]" in the plan sponsor).

**\*3** Principal argues that the surrender penalty and delay are not impediments because they are in the plan contract. This argument is misplaced. Fiduciary status focuses on the act subject to complaint. *See Pegram*, 530 U.S. at 226, 120 S.Ct. 2143. Here, Rozo complains about the setting of the CCR. Because plan sponsors do not have an opportunity to agree to the CCR until after it is proposed, the CCR is a new contract term. This court, therefore, must decide if plan sponsors can freely reject the term. *See Teets*, 921 F.3d at 1212. It does not matter that the barriers to rejecting the CCR are in the contract. *See, e.g., CBOE*, 713 F.2d at 256 (10% withdrawal limit in contract); *Charters v. John Hancock Life Ins. Co.*, 583 F. Supp. 2d 189, 199 (D. Mass. 2008) (termination penalties in contract).

Relatedly, Principal asserts, without support in the record, that enforcing the surrender charge at the time of exit is no different than having the plan sponsor pay an up-front charge for free exit later. Not true. The critical inquiry here is the plan sponsor's choice at the time it receives the proposed CCR. If impeded then, Principal exercises control.

Principal also believes that *Teets*, which found no fiduciary status, controls. The investment vehicle there, although similar to the one here, differs in one critical respect. The *Teets* service provider had a "contractual *option* to impose a 12-month waiting period on plan withdrawal," but never exercised it. *Teets*, 921 F.3d at 1217 (emphasis added). Here, Principal imposes the 12-month delay.

Finally, Principal argues that a *participant*'s ability to freely reject the CCR—regardless of the plan sponsor's ability—negates fiduciary status for the service provider. *Teets* summarizes ERISA case law as finding fiduciary status if either a plan sponsor *or* a participant is impeded from rejecting the service provider's act. *See Teets*, 921 F.3d at 1213, *citing CBOE*, 713 F.2d at 260 ("Fiduciary status turns on whether the service provider can force plans *or* participants to accept its choices about plan management or assets.") (emphasis added), *and citing Charters*, 583 F. Supp.2d at 199 ("And when the plan *or* the plan participants cannot reject the service provider's action or terminate the contract without interference or penalty, the service provider is a functional fiduciary.") (emphasis added). Because the sponsor here is impeded, the participant's ability to reject the CCR does not negate Principal's fiduciary status.

IV.

Because Principal is a fiduciary when it sets the CCR, this court need not address Rozo's argument alleging that Principal is conducting a prohibited transaction as a party in interest.

This court reverses and remands to the district court for proceedings consistent with this opinion.

\* \* \* \* \* \* \*

The judgment is reversed.

**All Citations**

--- F.3d ----, 2020 WL 543378

## Footnotes

1    The delay probably subjects a plan's funds to at least one new CCR, despite the plan sponsor never approving the rate change. Neither party confirms that a plan sponsor's funds are subject to a CCR change during the 12-month delay. However, the plan's contract says they are, stating, "If [Principal] delay[s] payment as permitted under this Section [regarding termination of contract], amounts to be paid or transferred will continue to earn interest at the rate determined pursuant to each Applicable Schedule as described in Article II, Section 2 until the transfer occurs." Article II, Section 2 governs the setting of the rate.

End of Document     © 2020 Thomson Reuters. No claim to original U.S. Government Works.