UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | Civil No. 19-10335-LTS |
| IN RE FIDELITY ERISA FEE LITIGATION | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

MEMORANDUM AND ORDER ON MOTION TO DISMISS (DOC. NO. 45)

February 14, 2020

SOROKIN, J.

Plaintiffs in this putative class action allege various violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. Doc. No. 38[1] (Amended Consolidated Class Action Complaint, "Complaint").[2] Plaintiffs are suing Defendants for alleged breach of fiduciary duty on several theories of liability and seek, among other things, to recover the "infrastructure fees" Defendants received from third-party fund managers in what Plaintiffs claim to be a contravention of Defendants' duties under ERISA.

Pending before the Court is Defendants' motion to dismiss for failure to state a claim. Doc. No. 45. The motion is fully briefed and the Court heard argument on February 7, 2020. For the reasons that follow, Defendants' motion to dismiss (Doc. No. 45) is ALLOWED.

---

[1] Citations to "Doc. No. __" reference documents appearing on the court's electronic docketing system; pincites are to the page numbers in the ECF header.

[2] This action is consolidated with civil action 19cv11595. Doc. No. 50. By agreement of the parties, the Court's disposition of Defendants' motion to dismiss the complaint in this action applies equally to the complaint at issue in civil action 19cv11595. Doc. No. 49.

I.     BACKGROUND[3]

Plaintiffs are individual participants in 401(k) retirement plans (the "Plans") offered by their employers (the "Plan Sponsors").  Doc. No. 38 ¶¶ 20-30.[4]  The Plans are employee pension benefit plans with the meaning of ERISA Section 3(2)(A), 29 U.S.C. § 1002(2)(A).  Id.  Defendants (or "Fidelity")[5] provide the Plans with access to FundsNetwork, an investment platform of thousands of mutual funds and other investment vehicles.[6]  Id.  ¶ 4 (citing https://www.fidelity.com/mutual-funds/overview).

The Plans engage Fidelity for plan administration services, which include, among other things, recordkeeping, allocation of participant contributions, distribution of account proceeds to departing participants, IRS tax withholding and reporting, and maintenance of the menu of investment options available to the Plans.  Id. ¶ 53.  Defendants manage and administer the retirement plan assets of the Plans pursuant to the terms of Basic Plan Documents and Adoption

---

[3] Unless otherwise noted, the factual allegations that follow are drawn from the Amended Consolidated Class Action Complaint (Doc. No. 38).  The Court focuses on Plaintiffs' allegations relating to Defendants' alleged fiduciary status because that is the central issue challenged by Defendants in their motion to dismiss.

[4] No Plan Sponsor or named fiduciary is a party to this case.  The parties jointly agreed to dismiss the Board of Trustees of UFCW Local 23 & Giant Eagle Pension Fund, a plaintiff originally named in the complaint, from the case.  Doc. No. 42.

[5] Defendants, all affiliated, are: (a) FMR LLC, a/k/a Fidelity Management & Research, the parent company of the other named defendants; (b) Fidelity Management & Research Company; (c) Fidelity Management Trust Company; (d) Fidelity Investments Institutional Operations Company, Inc.; (e) Fidelity Brokerage Services LLC; (f) National Financial Services LLC, and (g) ten anonymous defendants (John and Jane Does 1-10, or "Doe Defendants") whose identifies are not presently known to plaintiffs.  Doc. No. 38 ¶¶ 31–37.  Plaintiffs allege that Defendants "act as an integrated enterprise, as alter egos and agents of each other, and/or as a single/joint employer."  Id. ¶ 38.

[6] "These investment options include pooled investment vehicles commonly known as 'mutual funds' and other similar instruments or vehicles."  Doc. No. 48 at 9 n.3.  As such, Plaintiffs refer to them collectively "as 'mutual funds' as the differences are not germane to Plaintiffs' claims."  Id.  The Court follows the same practice here.

Agreements, as well as Service Agreements and Trust Agreements they have with the Plans (collectively, the "Contracts").  Id. ¶ 54.  Defendants enter into these standard form agreements with virtually all the Plans.  Id.

     A.  The Fiduciary Duty Allegations

         1.  The FundsNetwork

Pursuant to the Contracts, the Plans' trustees or participants may choose the mutual funds in which their contributions and any matching contributions are invested, and Fidelity allocates those contributions to particular accounts that correspond to the chosen mutual funds and the interests of the Plans and their participants in these mutual funds.  Id. ¶ 59.  Fidelity maintains complete discretion to substitute, eliminate and add mutual funds offered through its FundsNetwork, without providing: (a) adequate notice of such addition, deletion or substitution of the mutual funds available to the Plans for investment, (b) adequate notice and opportunity to accept or reject the addition, deletion or substitution of such mutual funds from the menus of investments available to the Plans, or (c) complete information regarding the nature of the fees and expenses paid by the mutual funds, including disclosure of the amount of the infrastructure fee payments received from the mutual funds.  Id. ¶ 69.  Fidelity also controls the menu of available mutual funds offered in its FundsNetwork and retains the discretion to change its fund menus and to not offer certain investment options to the Plans based upon contract pricing and other considerations.  Id. ¶ 71.

         2.  Infrastructure Fees

In January 2017, Fidelity began charging mutual funds "infrastructure fees."  Id. ¶ 5.  These "infrastructure fees" are calculated based on the assets of the Plans invested in the mutual funds.  Id. ¶ 7.  Fidelity negotiates these fees with mutual fund managers.  Id. ¶¶ 8, 106.  Fidelity has

tripled the amount of the infrastructure fees charged to mutual funds since January 1, 2017, by doubling them effective January 1, 2018, and then increasing them by another fifty percent effective January 1, 2019.  Id. ¶ 13.  The mutual fund companies pass on the additional costs of the infrastructure fees to the Plans through their investment fees, with the result that the Plans and their participants ultimately pay more (via higher expense ratios) than they agreed to pay in the Contracts.  Id. ¶ 99.

### 3.   The Omnibus Accounts

Pursuant to the terms of the Contracts, the assets of the Plans are held in omnibus accounts owned and controlled in trust by Fidelity ("Omnibus Accounts").  Id. ¶¶ 54-57.  The Omnibus Accounts "constitute assets of the Plans."  Id. ¶ 61.  Through these Omnibus Accounts, Fidelity processes all trades and maintains all the investment positions of the Plans in their respective mutual funds.  Id. ¶ 80.  Defendants use the Omnibus Accounts as leverage in negotiating their fees with mutual fund managers who want their mutual funds to be made available to potential investors on Defendants' FundsNetwork.  Id. ¶ 68 ("Fidelity is able to influence and control its own compensation derived from the Omnibus Accounts by, among other things, negotiating the terms of the payments that it will receive from the mutual funds in return for being offered to the Plans through the FundsNetwork, including the amount of the [infrastructure fee] payments at issue that are calculated, in part, based on the assets invested in the Omnibus Accounts.").

### B.  The Non-Fiduciary Allegations

Plaintiffs contend in the alternative that "to the extent that any of the Defendants is not deemed a fiduciary or co-fiduciary under ERISA, and since each of the Defendants operated under common control with knowledge of all Defendants imputed to the other Defendants, any of the Defendants that is not deemed liable as a fiduciary or co-fiduciary is liable to the Class under

ERISA for all recoverable losses and relief as a party-in-interest or other non-fiduciary that knowingly participated in prohibited transactions and breaches of fiduciary duty in violation of ERISA, as well as in knowing breaches of trust." Doc. No. 38 ¶ 148.

C. The Contracts at Issue

Plaintiffs contend that "Fidelity is a fiduciary with respect to its compensation both because it has the contractual authority to determine its own compensation and because it acted outside of its contractual authority when doing so." Doc. No. 48 at 17 (emphasis added).

In support of their motion to dismiss, Defendants rely on excerpted portions of the plan documents ("Excerpts") of one of the Plans represented in this action—the T-Mobile USA, Inc. 401(k) Retirement Savings Plan and Trust (the "T-Mobile Plan")—which they say are an "exemplary set of Service Agreements between Fidelity and one of plaintiffs' Plans." Doc. No. 46 at 9 n.3; Doc. No. 47-1; Doc. No. 47-2. Counsel for Defendants attests that these are "true and correct cop[ies] of excerpts from the Basic Plan Document for the T-Mobile USA, Inc. 401(k) Retirement Savings Plan & Trust" and "from the Fidelity Investments Retirement Plan Service Agreement between T-Mobile USA, Inc., the T-Mobile Retirement Plans Committee, and Fidelity Management Trust Company." Doc. No. 47 ¶¶ 3-4; see also Doc. No. 53 (Decl. of S. Nick, VP of Contracts, Fidelity Investments, stating that the Excerpts are true and correct copies of excerpts of the original documents governing the administration of the T-Mobile Plan). Defendants' counsel also attests that he "produced to lead counsel for plaintiffs a true and correct copy of the complete set of the agreements governing the T-Mobile USA, Inc. 401(k) Retirement Savings Plan & Trust ("T-Mobile Plan") that were in effect as of January 1, 2017 and all subsequent amendments, and the Basic Plan Document for the T-Mobile Plan in effect as of January 1, 2017." Doc. No. 54 ¶ 3.

Plaintiffs dispute the authenticity of the Excerpts of the T-Mobile agreements, question their representativeness of the Contracts at issue in this action, and contend that the Court may not take the Excerpts into consideration on a motion to dismiss on the grounds that they are not "central" to Plaintiffs' claims as the Complaint "does not quote from or rely on any specific language contained in the Excerpts." Doc. No. 48 at 13. "As such," Plaintiffs argue, "the [Complaint's] factual allegations are not 'expressly linked to—[or] admittedly dependent upon'— those Excerpts." Id. (quoting Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 34 (1st Cir. 2001)).

In deciding a Rule 12(b)(6) motion, a court may "consider documents the authenticity of which [is] not disputed by the parties; . . . documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint . . . even when the documents are incorporated into the movant's pleadings." Lambert v. Fiorentini, No. 19-1406, 2020 U.S. App. LEXIS 2287, at *3 (1st Cir. Jan. 24, 2020) (internal quotation marks and citations omitted). The Court held a hearing on January 7, 2020 to address this threshold issue.

After considering the parties' arguments, the Court finds that the Excerpts are authentic and are representative of the Contracts at issue in this case, which Plaintiffs themselves characterize as "standard form agreements." Doc. No. 38 ¶ 54; see also id. ¶ 111 (alleging in support of class action status that "Plaintiffs, who are representatives of the Plans, have claims that are typical of all of the members of the Class" and that "Plaintiffs' claims and all of the Class members' claims arise out of the same uniform course of conduct by Defendants and arise under the same legal theories that are applicable as to all other members of the Class."). Plaintiffs offer no evidence that the Excerpts are anything but what they purport to be—examples of the relevant provisions of the Contracts at issue in this action.

Based on a review of the Complaint, the Court also finds that the Contracts are central to Plaintiffs' allegations. See, e.g., id. ¶ 59 ("Pursuant to the Contracts, participants, or the Plans' trustees, may choose the mutual funds in which their contributions and any matching contributions are invested, and Fidelity allocates those contributions to particular Omnibus Accounts or sub-accounts within the Omnibus Accounts that correspond to the chosen mutual funds and the interests of the Plans and their participants in these mutual funds."); id. ¶ 69 ("Pursuant to the Contracts, Fidelity also maintains complete discretion to substitute, eliminate and add mutual funds offered through its FundsNetwork by and through its Omnibus Accounts, as well as to make other investment decisions on behalf of the Plans."); id. ¶ 92 ("The Contracts do not meaningfully disclose that the [infrastructure fee] payments at issue will be made to Fidelity by the mutual funds offered as investments to the Plans or that Fidelity will utilize the investments in the Omnibus Accounts to generate profits based upon the existence and leveraging of these assets for Fidelity's own benefit."); id. ¶ 101 ("Fidelity also retains the right and discretion to unilaterally change its investment management and administrative charges assessed under the Contracts and in its agreements (sometimes referred to as participation agreements) with the mutual funds.").

Plaintiffs' own theories of liability confirm this finding. They contend that "Fidelity is a fiduciary with respect to its compensation both because it has the contractual authority to determine its own compensation and because it acted outside of its contractual authority when doing so." Doc. No. 48 at 17; id. at 8 ("This case is about whether Fidelity is entitled to unilaterally, and extra-contractually, increase its compensation for the services it already agreed to provide to the Plans by shaking down mutual fund companies, which, in turn, pass the costs to the Plans.") (all emphasis added).

II.     LEGAL STANDARD

Defendants move to dismiss the Complaint for "failure to state a claim upon which relief can be granted" pursuant to Federal Rule of Civil Procedure 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). Rather, to survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." In re Fid. ERISA Float Litig., 829 F.3d 55, 59 (1st Cir. 2016) (quoting Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016)). The plausibility question triggers a two-step analysis. Id. First, the Court must "distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. Second, it "must determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable." Id.

III.    DISCUSSION

A. Counts I-IV – Liability for Breach of Fiduciary Duty Under ERISA

ERISA § 404(a) imposes on plan fiduciaries a duty of loyalty, which requires fiduciaries to discharge their "duties with respect to a plan solely in the interest of the participants and beneficiaries," and a duty of prudence, which requires plan fiduciaries to act with the prudence that someone "acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(A)-(B). Sections 406(a) and (b) also prohibit plan fiduciaries from causing ERISA plans to enter into certain "prohibited transactions" involving fiduciaries or other parties having an interest in the plan. Id. § 1106(a)-(b).

Counts I to IV of Plaintiffs' Complaint, which claim various breaches of fiduciary duty, require Plaintiffs to plausibly allege that Defendants, who are not named fiduciaries, nevertheless qualify as "fiduciar[ies] with respect to a plan."  29 U.S.C. § 1106(b).  See Pegram v.  Herdrich, 530 U.S.  211, 226 (2000) ("In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."); O'Toole v. Arlington Tr. Co., 681 F.2d 94, 97 n.1 (1st Cir. 1982) (fiduciary status is "predicate condition" for violation of § 1106(b)(1)).

Under ERISA, an entity is a fiduciary with respect to a plan only to the extent that it: (i) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets; (ii) renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so; or (iii) has any discretionary authority or discretionary responsibility in the administration of such plan.  29 U.S.C. § 1002(21)(A); Livick v. The Gillette Co., 524 F.3d 24, 29 (1st Cir. 2008) ("[A] party not identified as a plan fiduciary can become one if, but only to the extent that, he or she undertakes discretionary tasks related to the plan's management or administration.").  Emphasizing the statute's "to the extent that" language, the First Circuit has made clear that "fiduciary status is not an all or nothing proposition."  Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 18 (1st Cir. 1998).  Rather, "fiduciary liability arises in specific increments correlated to the vesting or performance of particular fiduciary functions in service of the plan, not in broad, general terms."  Id.

1. Defendants' alleged fiduciary status with respect to their compensation.

"The caselaw is clear that a service provider's retention of discretion to set compensation can create fiduciary duties under ERISA with respect to its compensation." Golden Star, Inc. v. Mass Mut. Life Ins. Co., 22 F. Supp. 3d 72, 81 (D. Mass. 2014) (Saris, C.J.). Plaintiffs concede that Defendants are not fiduciaries when negotiating the terms of their compensation with the Plans. Doc. No. 48 at 16. They are right to do so. See, e.g., Santomenno v. Transamerica Life Ins. Co., 883 F.3d 833, 838 (9th Cir. 2018) ("Transamerica") ("A service provider is plainly not involved in plan management when negotiating its prospective fees"); Santomenno v. John Hancock Life Ins. Co. (USA), 768 F.3d 284, 295 (3d Cir. 2014) (service provider "owes no fiduciary duty with respect to the negotiation of its fee compensation") (quoting Renfro v. Unisys Corp., 671 F.3d 314, 324 (3d Cir. 2011); Hecker v. Deere & Co., 556 F.3d 575, 583 (7th Cir. 2009) ("a service provider does not act as a fiduciary with respect to the terms in the service agreement if it does not control the named fiduciary's negotiation and approval of those terms.").

"However, 'after a person [or entity] has entered into an agreement with an ERISA-covered plan, the agreement may give it such control over factors that determine the actual amount of its compensation [from the ERISA-covered plan] that the person thereby becomes an ERISA fiduciary with respect to that compensation.'" Golden Star, 22 F. Supp. 3d at 81 (quoting F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1259 (2d Cir. 1987)). See also Glass Dimensions, Inc., ex rel. Glass Dimensions, Inc., Profit Sharing Plan & Trust v. State Street Bank & Trust Co., 931 F. Supp. 2d 296, 304 (D. Mass. 2013) (Tauro, J.) (finding that bank that offered and managed funds was a fiduciary with respect to its compensation because its contract with the ERISA plan allowed it to charge a lending fee "anywhere from 0% to 50%," which constituted significant discretionary authority" to determine the amount of its compensation" from the ERISA

plan); Charters v. John Hancock Life Ins. Co., 583 F. Supp. 2d 189, 197 (D. Mass. 2008) (Stearns, J.) (finding defendant was a fiduciary where the contract with a 401(k) plan set a maximum administrative maintenance charge that could be levied on each investment sub-account, and within the range up to the maximum, defendant "had the sole authority to set the . . . charge."). The issue before the Court, then, is whether Plaintiffs have plausibly alleged that Defendants have such control over the factors that determine the amount of their compensation from Plaintiffs' Plans.

The essence of Plaintiffs' first theory of liability is that by requiring the payment of infrastructure fees from mutual funds that participate in FundsNetwork after the Plans have entered into their Contracts with Defendants, Defendants have unilaterally increased the amount of their compensation from the Plans because the mutual funds necessarily pass on to the Plans whatever infrastructure fees they pay to Defendants.   See, e.g., Doc. No. 38 ¶ 8 ("Fidelity uses its ownership and control of the FundsNetwork to negotiate for the receipt of these [infrastructure fees] from mutual funds, and the secret [infrastructure fee] payments have the effect of increasing the expense ratios and/or other expenses of the mutual funds (in the form of transaction fees), which expenses are deducted directly from the assets of the Plans and their participants."); id. ¶ 99 ("Mutual funds contract with various entities to perform managerial, administrative, accounting, legal and other services.  Mutual funds pay the entities providing those services, and the mutual funds pass those costs on to their investors by charging them a variety of fees, which are typically referred to as investment management fees, transaction fees, distribution fees, commissions, sub-transfer agency fees, marketing fees, or 12b-1 fees.  Investors thereby effectively pay fees to the mutual funds for these and other services.")  Plaintiffs contend that "Fidelity is a fiduciary under ERISA by virtue of its discretion and exercise of discretion in

11

negotiating/establishing its own compensation by and through its setting of the amount and receipt of the secret [infrastructure fee] payments."  Id. ¶ 8.

Plaintiffs' first theory fails because they concede that Defendants negotiate the payment of infrastructure fees with the mutual funds.  See, e.g., Doc. No. 38 ¶ 106 ("Fidelity regularly negotiates with mutual funds to increase the amount of these payments . . ."); id. ¶ 68 ("Fidelity is able to influence and control its own compensation derived from the Omnibus Accounts by, among other things, negotiating the terms of the payments that it will receive from the mutual funds in return for being offered to the Plans through the FundsNetwork, including the amount of the [infrastructure fees] at issue that are calculated, in part, based on the assets invested in the Omnibus Accounts."); id. ¶ 83 ("Fidelity exercises discretion to establish, negotiate and self-determine its own compensation for providing recordkeeping and other services to the Plans by, among other things, negotiating increases in its own compensation after entering into the Contracts without notice to the Plans") (all emphasis added).  Plaintiffs' theory also fails because the Complaint does not plausibly allege that the mutual fund managers who pay the infrastructure fees to Fidelity are required to pass on the costs of the fees to the Plans or to the participants who invest in their mutual funds.  Rather, the decision of whether to pass on those costs is made independently by the mutual fund managers, not by Fidelity.

Plaintiffs have therefore failed plausibly to allege that Defendants unilaterally control the terms of the compensation they receive from the Plans.[7]  Without such control, Defendants are not

---

[7] Although Plaintiffs generally concede that Defendants negotiate the payment of infrastructure fees with the mutual funds, they allege in a single paragraph of the Complaint that Fidelity "retains the right and discretion to unilaterally change its investment management and administrative charges assessed under the Contracts . . ."  Doc. No. 38 ¶ 101.  But the Contracts belie this allegation.  See, e.g., Doc. No. 47-2 at 5, Art. 2 § 12 ("This Agreement may be amended or modified at any time and from time to time by an instrument executed by the parties. Notwithstanding the preceding sentence, Fidelity reserves the right to amend unilaterally this

fiduciaries with respect to the compensation they receive from the Plans.  As another session of

this Court recently reasoned, if service providers are not ERISA fiduciaries when negotiating their

compensation with ERISA plans, "it is difficult to see how a service provider could be an ERISA

fiduciary when it negotiates a fixed rate of compensation from an entity other than the Plan, as

Plaintiffs allege here."  Fleming v. Fid. Mgmt. Trust Co, No. 16-cv-10918,  2017 U.S. Dist. LEXIS

155222, at *23 (D. Mass. Sept. 22, 2017) (Burroughs, J.).

 The Court therefore rejects Plaintiffs' first theory of Defendants' fiduciary status.

  2. Defendants' alleged fiduciary status with respect to their use of the Omnibus Accounts.

 Plaintiffs' second theory is that Defendants are fiduciaries with respect to their use of the

Omnibus Accounts.  This theory also fails because Plaintiffs do not allege that, as directed trustees

of the Omnibus Accounts, Defendants fail to follow the instructions they receive from Plan

Sponsors and participants as to which mutual funds are selected for investment, or how the

investments should be allocated.  Nor do they allege that Defendants improperly redirect the

investments of Plan participants, like Plaintiffs, through the Omnibus Accounts from mutual

funds managed by companies that do not pay infrastructure fees to mutual funds managed by

companies that do.  See, e.g., Teets v. Great-West Life & Annuity Ins. Co., 919 F.3d 1232, 1245

(10th Cir. 2019) ("Fiduciary status turns on whether the service provider can force plans or

participants to accept its choices about plan management or assets."); Renfro, 671 F.3d at 323

("[A] directed trustee is essentially immune from judicial inquiry because it lacks discretion,

taking instructions from the plan that it is required to follow.") (internal quotation marks and

---

Service Agreement with prior written notice to the Employer or Administrator to comply with then current law, or to update services and procedures."); id. at 6, Art. 2 § 12 (amended) ("Fidelity may unilaterally add or enhance services, provided there is no impact on the fees set forth in this Agreement.") (emphasis added).

citation omitted); Chicago Bd. Options Exchange, Inc. v. Connecticut General Life Ins. Co., 713

F.2d 254, 260 (7th Cir. 1983) (finding fiduciary status where service provider "effectively

determined what type of investment the Plan must make").  The Court therefore rejects Plaintiffs'

second theory of Defendants' fiduciary status.

3.  Defendants' alleged fiduciary status with respect to the funds available on
FundsNetwork.

Plaintiffs' third theory is that Defendants are Plan fiduciaries because they control the menu

of investment options available to the Plans.  This theory also fails.  The Contracts make clear that

it is the Plan Sponsors—not Defendants—who select which investment options are made available

to the Plans' participants from the FundsNetwork.  Doc. No. 47-1, Art. 8.01 (Defendants "shall

have no responsibility for the selection of Permissible Investments and shall not render investment

advice to any person in connection with the selection of such options."); Doc. No. 47-2, Art. II § 5

("Fidelity shall have no discretion or authority with respect to the investment of the Plan assets but

shall act solely as a directed Trustee of the contributed funds.  Fidelity shall have no responsibility

for the selection of Permissible Investments for the Plan and shall not render investment advice to

any person in connection with the selection of such options.  The parties acknowledge that the

Administrator is capable of evaluating investment risks independently.  The Administrator affirms

that at all times all decisions concerning the Plan's Permissible Investments or its investment

strategies, including, but not limited to, evaluations of information provided by Fidelity or its

affiliates, shall be made by exercising independent judgment.").

Selecting the funds available on the FundsNetwork Platform does not, without more,

transform Fidelity into a fiduciary.  As several other courts have held, having control over the

broad menu of investment options from which plan sponsors may choose their plan's investment

options does not transform a platform provider into a functional fiduciary.  Leimkuehler v. Am.

United Life Ins. Co., 713 F.3d 905, 907-08 (7th Cir. 2013) ("[S]tanding alone, the act of selecting both funds and their share classes for inclusion on a menu of investment options offered to 401(k) plan customers does not transform a provider of annuities into a functional fiduciary under [29 U.S.C. §] 1002(21)(A)(i)."); id. at 912 ("[T]he act of selecting both funds and their share classes for inclusion on a menu of investment options offered to 401(k) plan customers does not transform [an investment provider] into a functional fiduciary."); Santomenno, 768 F.3d at 289 ("Notwithstanding John Hancock's authority over the construction of the Big Menu and its selection of share classes, the trustees retained the responsibility for selecting investment options for inclusion in the Small Menu and for offering to Participants."); Hecker, 556 F.3d at 583 ("[T]he Trust Agreement gives Deere, not Fidelity Trust, the final say on which investment options will be included.  The fact that Deere may have discussed this decision, or negotiated about it, with Fidelity Trust does not mean that Fidelity Trust had discretion to select the funds for the Plans."); Transamerica, 883 F.3d at 839 ("TLIC did not have a fiduciary duty to provide plan beneficiaries with the option to invest in the lowest priced share class of each of the mutual funds that underlie the separate investment options"); Renfro, 671 F.3d at 323 ("Fidelity had no contractual authority to control the mix and range of investment options, to veto Unisys's selections, or to constrain Unisys from including other investment options in the plan administered by an entity other than Fidelity.  It therefore did not function as a fiduciary with respect to selecting and maintaining the range of investment options in the plan.").  As the Third Circuit explained in Santomenno, because "[n]othing prevented the trustees from rejecting John Hancock's product and selecting another service provider," John Hancock was not a fiduciary in selecting the funds offered through their investment product.  768 F.3d at 295.

Importantly, Plaintiffs allege only that Fidelity "maintains complete discretion to substitute, eliminate and add mutual funds offered through its FundsNetwork" and that "Fidelity has exercised" that discretion. Doc. No. 38 ¶ 69; id. ¶ 100 ("Fidelity retains the discretion, authority and control to delete and add investment options from the Plans' available menu of investments."). Plaintiffs nevertheless argue that a provision of the Excerpts on which Defendants rely makes clear that Defendants have the discretion to remove or substitute any of the investment options that were specifically made available to the Plans before they entered into their Contracts with Defendants, after those investment options were chosen by the Plan Sponsors or Plan participants. Doc. No. 48 at 20 ("The language of the provision that Defendants cite provides that 'Fidelity reserves the right to amend unilaterally this Service Agreement with prior written notice [to the Employer or Administrator] to comply with then current law, or to update services and procedures.'") (quoting Doc. No. 47-2 at 5, Art. 2 § 12) (internal citation omitted).

Defendants' broad discretion to amend the Contracts to comply with changes in the law or to update services and procedures—a discretion they can only exercise after providing prior written notice—does not constitute an allegation that Defendants have (or have exercised) any discretion to alter the specific investment options available to the Plans in which Plaintiffs participated. Nor does that language on its own, without any specific factual allegations, plausibly suggest Defendants' authority to alter investment options. The Court therefore rejects Plaintiffs' third theory of Defendants' fiduciary status.

B. Count V – Liability as a Non-Fiduciary Under ERISA

Count V alleges in the alternative that in the event any of the Defendants is not deemed a fiduciary or co-fiduciary under ERISA, such Defendant is nevertheless liable as a party-in-interest or other non-fiduciary that knowingly participated in prohibited transactions and breaches of

fiduciary duty of any of the Defendants who are deemed to be fiduciaries.  Because this Count

requires that at least one of the Defendants be deemed a fiduciary, and because the Court has held

that Plaintiffs have not plausibly alleged Defendants' fiduciary status as to any of the types of

conduct as to which they complain, Count V fails for the same reason Counts I – IV fail.[8]

IV.     <u>CONCLUSION</u>

For the reasons stated above, Defendants' motion to dismiss Plaintiffs' Amended

Consolidated Class Action Complaint (<u>Doc. No. 45</u>) is ALLOWED.[9]

SO ORDERED.

/s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

---

[8] As noted in n.5 supra, Plaintiffs also name 10 anonymous individuals (John and Jane Doe Defendants 1-10) as defendants in this action.  Because Plaintiffs provide no description of these individuals or their relationship to any of the Plaintiffs or named Defendants, and assert no factual allegations from which the status of the Doe Defendants as potential fiduciaries may be discerned, nothing about the Doe Defendants changes the Court's analysis as to Defendants' liability—or lack thereof—under Count V.

[9] Plaintiffs filed their original complaint on February 21, 2019.  <u>Doc. No. 1</u>.  They had 90 days in which to complete service on all the Defendants.  Doc. No. 8.  They served only the named Defendants.  They did not serve the Doe Defendants, seek a continuance of the service deadline, seek discovery as to the identity of these Defendants, or demonstrate good cause for failure to serve them.  Time has now run for service on these Defendants.  The Court therefore dismisses the Complaint as to these Defendants as well.